UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| |
|---|
| JARED M. VILLERY,<br><br>   Plaintiff,<br><br>vs.<br><br>N. GRANNIS, Chief Inmate Appeals, *et al.*,<br><br>   Defendants. |

Case No. 1:10-cv-01022-RRB

**SECOND SCREENING ORDER**

   Jared M. Villery, a California State prisoner appearing *pro se* and *in forma pauperis*, brought this action under 42 U.S.C. § 1983 against various officials and employees of the California Department of Corrections and Rehabilitation ("CDCR").[1]  Villery's claim arose during his incarceration at the Kern Valley State Prison ("KVSP").  On April 11, 2013, this Court entered a Screening Order dismissing the Complaint with leave to amend consistent

---

   [1]  Villery has named twenty-seven individuals, including the Warden, Deputy Wardens, Associate Wardens, Captains, Lieutenants, Sergeants, Counselors, Classification Representatives, Correctional Officers, a Clinical Social Worker, and an Ombudswoman, as well as sixteen Does.

with that Order.[2]  Villery timely filed his First Amended Complaint,[3] screening of which is now pending before this Court.[4]

## I.    DISCUSSION

In his First Amended Complaint Villery continues to name the same individuals as defendants. The gravamen of Villery's complaint remains the same, i.e., that as an individual of mixed race (Creole (African-American and French) and Caucasian), he was improperly classified as white; the defendants, individually and collectively, refused or failed to properly classify him as black and, as a result, on August 3, 2007, while crossing the yard, Villery was attacked by two white inmates, stabbed in the back, and repeatedly kicked and punched.

After setting in some detail the acts or omissions of each of the named defendants, Villery alleges:

126.  In doing as alleged herein above, all defendants acted with deliberate indifference to plaintiff's personal safety by either failing to properly classify him, failing to segregate him to ensure his safety, and/or by actively placing him in harms way.  Because the white inmates would have no reason to attack plaintiff if he had been properly classified, and because they would have  been unable to attack plaintiff if he had been placed in protective segregation, if any one of the defendants, at any time prior to his assault, took reasonable measures, to correct the circumstances which created the safety concern, or to have plaintiff removed from the general population based on the safety concerns, plaintiff would never have been assaulted. Therefore the defendant's deliberate indifferent actions and omissions were

---

[2]      Docket 7.

[3]      Docket 10.

[4]      Inasmuch as this Court set forth the requirements for screening civil rights complaints in its earlier Screening Order, in the interest of brevity they are not repeated herein.

the direct and proximate cause which resulted in plaintiff being subjected to unnecessary and wanton infliction of pain, including severe physical injury and psychological and emotional distress and trauma.  This was a direct and prolonged violation of plaintiff's rights under the Eighth Amendment to the United States Constitution.[5]

In his Amended Complaint Villery refers to numerous internal prison proceedings, including inmate grievances, disciplinary proceedings, and the prison ombudsman spanning a time period starting in March 2006 and ending in August 2007 in which he raised his racial mis-classification claim.  In the initial Screening Order this Court noted that, with respect to his various internal grievances and disciplinary proceedings, Villery had to plead that: (1) each named defendant had the authority to change his racial classification; (2) the grievances were incorrectly decided; and (3) even if incorrectly decided, the actions were the proximate cause of Villery's injuries.

As to the first requirement, Villery pleads "on information and belief" that each of the named defendants had the requisite authority.  Although with respect to the majority of the named defendants, that any of them had that authority is inherently implausible, because prisoner *pro se* pleadings are liberally construed in favor the prisoner,[6] for the purpose of screening the Court accepts those allegations.  Where Villery falls short is with respect to the second and third deficiencies.

---

[5]     First Amended Complaint, at 30–31 [Docket 10 at 33-34].

[6]     *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010).

In June and again in July 2006, Villery was informed that his race could not be changed without some legal verification, i.e., an original or certified copy of his birth certificate.[7] It appears from the record that as late as August 5, 2007, *two days after the attack*, Villery still had not obtained and presented to the appropriate prison officials a certified copy of his birth certificate.  How refusing to accept Villery's claim based solely upon his statement without some proof somehow exhibits deliberate indifference is as inexplicable as it is unexplained.  Perhaps more importantly, Villery's claims of harm are that he was denied either single-cell housing or was disciplined for refusing to accept a cell-mate,[8] and during a portion of the time frame Villery was placed in Administrative Segregation.[9]  In an appeal to Inmate Appeals Branch some time after February 11, 2007, and the date it was denied, May 18, Villery stated:

> I have been under the custody of the CDC for over 19 months and besides the 115 received because of this issue, and my current situation I have never caused any problems[.]  I have never been involved in any fights, I don't cause trouble, and for the last 5 months I have been a teacher's aide in A yards ABE 200 class trying to help other inmates who want to learn and better themselves. All I ask is that the logical thing is done and that I am placed on single cell status so I can continue to work and do my time in peace without having to worry about who's going to come after me on the yard. I realize that the CDC by law does not recognize race as a housing factor, but what it comes down to it the inmates decide housing and pretty much everything else that goes on in here.  The old saying goes "If it ain't broke, don't fix it", this is the case with my situation.  For the past 11 months

---

[7]     First Amended Complaint, Exh A, B [Docket 10 at 43, 46].

[8]     To the extent that Villery's Amended Complaint might be construed as challenging his disciplinary action, that is the subject of a habeas petition under 28 U.S.C. § 2254, not a § 1983 civil rights action.  *See Preiser v. Rodriguez*, 411 U.S. 475, 494, 500 (1973).

[9]     First Amended Complaint ¶¶ 40–53 [Docket 10 at 13–17].

I have been by myself with not one problem.  [. . . .]  I know this is not a sensitive issue because as long as I am in a cell by myself I can program like any other inmate in general population.[10]

Villery's claims, other than the August 3 attack, all involve housing, not activities in the yard outside the cell.  Villery was never able to identify any specific incidence or threat to his safety, merely a generalized fear.  Villery acknowledges that for the preceding eleven months he had not experienced a single problem, nor does he contend that he experienced any problem or specific threat prior to August 3. The Supreme Court has made clear that segregating prisoners by race violates the Fourteenth Amendment unless such segregation is narrowly tailored to address the necessities of prison security and discipline,[11] a legal principle Villery candidly acknowledges. How, if segregating Villery on account of his race in the absence of compelling circumstances would violate his constitutional right, refusing to segregate Villery based upon his race in the absence of compelling circumstances violates a constitutional right is counterintuitive. Thus, even liberally construing Villery's contentions, the actions of prison officials prior to August 3 simply do not rise to the level of a violation of Villery's constitutional rights.

In addition to the physical injuries suffered in the August 3 attack, Villery seeks damages for his alleged emotional trauma, the result of his fear for his safety. In the absence of a physical injury, Villery may not bring an action for mental or emotional injury.[12]

---

[10]   First Amended Complaint, Exh. G [Docket 10 at 79].

[11]   *Johnson v. California*, 543 U.S. 499, 507–15 (2005).

[12]   42 U.S.C. § 1997e(e).

While the physical injury need not be significant, it must be more than *de minimis*.[13]  Except for his claim concerning the attack on August 3, 2007, Villery did not suffer any physical injury as a result of the alleged violation of his civil rights. As this Court noted in its initial Screening Order, except for the persons who permitted Villery to cross the yard unescorted on August 3, 2007, the alleged errors were simply too remote to establish proximate cause of Villery's injuries.

The August 3 assault on Villery stands on somewhat different footing. Villery has pleaded that on that date, because of multiple incidents between Black and Hispanic inmates, only whites were allowed yard activities.  Despite this situation, because he was classified as white, Villery was required to cross the yard to and from his interview with the ombudsman unescorted.  A prison official is deliberately indifferent only if "the official knows of and disregards an excessive risk to an inmate's safety; the official must both be aware of facts from which the inference could be drawn that a serious harm exists, and he must also draw the inference."[14]  "Deliberate indifference is a high legal standard."[15]

Although Villery may have a high hurdle to surmount and his claim stemming from the August 3 attack may not survive a motion for summary judgment, this Court cannot say at the screening stage that Villery has not pleaded a viable claim as against those prison

---

[13]     *See Oliver v. Keller*, 289 F.3d 623, 626–27 (9th Cir. 2002).

[14]     *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Toguchi v. Chung*, 391 F.3d 1051, 1056–57 (9th Cir. 2004).

[15]     *Toguchi*, 391 F.3d at 1060.

officials responsible for providing for Villery's safety during his transit from his meeting with the ombudsman.

II.    **ORDER**

**IT IS THEREFORE ORDERED** that the First Amended Complaint is **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff is granted until **August 5, 2013**, within which to file an Amended Complaint, consistent with this Order.

**IT IS SO ORDERED** this 2nd day of July, 2013.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE